[No. 3176.   Decided April 5, 1899.]

MONROE J. FRIEDMAN *et al., Appellants,* v. CHARLES H. MANLEY *et al., Respondents.*

NEW TRIAL—SURPRISE.

In an action for tobacco sold and delivered by plaintiffs, in which the defendants counterclaim for damages for the value of a quantity of tobacco sold them but not delivered, plaintiffs are not entitled to a new trial on the ground of surprise, from the fact that defendants introduced in evidence a bale of the tobacco to establish its quality, instead of the sample, which had been used up, especially when, from depositions taken in defendants' behalf several months prior to the trial, plaintiffs must have been apprised of defendants' claim as to the quality of the tobacco.

SAME—DISCRETION OF COURT.

Where the record shows a substantial conflict in the testimony, the discretion of the trial court in granting or refusing a new trial will not be disturbed.

Appeal from Superior Court, Pierce County.—Hon. THOMAS CARROLL, Judge.   Affirmed.

*Sharpstein & Blattner,* for appellants.

*Johnson Nickeus* and *Emmett N. Parker,* for respondents.

The opinion of the court was delivered by

GORDON, C. J.—Plaintiffs are wholesale dealers in tobacco, residing in Chicago.   The defendants are cigar manufacturers, residing in Tacoma, in this state.   The action was brought to recover the balance due on an account.   For a counterclaim, defendants alleged that, by an oral agreement made on July 18, 1896, at the city of Tacoma, the plaintiffs sold and agreed to deliver to defendants at Tacoma ten bales of Havana tobacco, according to

sample; that on the 14th of September, 1896, the plaintiffs, for a valuable consideration, sold and agreed to deliver to defendants four additional bales, under the same terms and conditions as those under which the ten bales were sold, and of the same quality and quantity; that the tobacco was sold subject to inspection in the city of Tacoma, and was to be forwarded to the defendants upon their order or request. The price agreed to be paid for said tobacco was $1.13 per pound. Plaintiffs delivered eight bales in accordance with the agreement, but failed and refused to deliver the remaining six bales, or any part thereof; that, at the time when the tobacco should have been delivered by the terms of the agreement, the market value of the tobacco in question in the city of Tacoma was $4 per pound; that, in consequence of plaintiffs' failure to deliver in accordance with the terms of the agreement aforesaid, defendants were damaged, etc. From a judgment in defendants' favor plaintiffs have appealed.

The action was commenced on September 4, 1897, and brought to trial on March 23, 1898. The evidence upon the part of appellants was all taken by deposition, upon interrogatories. At the trial the defendants put in evidence what purported to be the last bale of tobacco received by them from the plaintiffs, coupled with other evidence tending to show that the tobacco contained in the bale was of the same kind and character and value as that contained in the sample on which the sale was made. The sample was not produced. In explanation of the failure to produce it, defendants testified that the sample was retained by them for a time, and until a considerable portion of the tobacco covered by the agreement was delivered, and, finding that it corresponded in character and value with that of the sample, the tobacco contained in the sample was used in their business. There was a great deal of evidence as to the character and kind of tobacco which the

sample contained. At the close of the case, plaintiffs' counsel moved the court to exclude from the consideration of the jury all evidence as to the value and character of the tobacco, upon the ground that the evidence in the case showed that the contract was for "filler" tobacco, and not for "wrapper" tobacco, as testified to by the defendants; also, to exclude from their consideration the question of damages, as based upon the value of wrapper tobacco, upon the ground that the contract in evidence showed that the tobacco was to be filler tobacco. The motion was denied.

In support of their motion for a new trial, plaintiffs filed numerous affidavits, and also various letters and telegrams received from defendants during the life of the contract and in relation thereto. In these various letters and telegrams the tobacco was referred to as "filler," and the main contention of the appellants is that the non-production of the sample, and the introduction of the bale in evidence, together with the testimony of the defendant that the sample from which the sale was made and also the tobacco contained in the bale (which, as already mentioned, purported to have been the last bale received by defendants under the contract), contained from seventy-five to eighty per cent. of "wrapper" tobacco, constituted a surprise, such as ordinary prudence could not have guarded against, and that plaintiffs, being non-residents of the state and not in attendance at the trial, and their counsel being ignorant of the existence of the letters and telegrams already mentioned, were unable to meet the proof upon which defendants recovered at the trial.

It is well recognized and understood that counsel who are obliged to rely in the trial of a cause upon depositions, and who are unattended by their client at the trial, labor under a serious disadvantage. But it is a disadvantage which the client voluntarily assumes, and he must accept the consequences which flow therefrom. It would have

been only the exercise of ordinary caution, prudence and forethought for plaintiffs to have furnished their counsel with all the correspondence bearing upon this transaction, and their failure to do so cannot now avail them. Counsel have fully and with ability discharged their duty and are entitled to be absolved from any imputation of fault.

The answer of the defendants does not state whether the tobacco covered by the agreement was to be wrapper or filler, but distinctly alleges that it was to be Havana tobacco, and, further, that the market value of such tobacco in the city of Tacoma at the time when, by the terms of the agreement, the same should have been delivered by the defendants to plaintiffs, was $4 per pound. On September 23, 1897, six months prior to the date of the trial, the deposition of F. W. Brewing (one of respondents' witnesses) was taken by stipulation. In this deposition the witness stated that he had worked for the respondents and knew and examined the Havana tobacco purchased by them from the plaintiffs; that he saw the tobacco delivered there; that it was in good condition and was *"wrapper stuff."* Again, on December 16, 1897, more than three months before the trial, the deposition of one Rothschild was taken upon stipulation, in which he stated that he had examined some Havana tobacco which purported to have been bought by defendants from plaintiffs. In this deposition he was asked to state "whether the bale contained 'filler' or 'wrapper' tobacco, or both, and in what proportion." In answer to this question he stated that the "bale contained about seventy-five per cent. wrappers, and about twenty-five per cent. fillers." So that if the terms "wrappers" and "fillers," as applied to tobacco, were of material importance in the determination of this cause, it is evident that at an early stage of the proceeding plaintiffs were advised by the testimony of these two witnesses, taken upon deposition months before the trial, that it was the conten-

tion of the plaintiffs that the tobacco which the agreement called for was to be largely wrapper, instead of filler, tobacco.

In our view, however, under the pleadings and proof, these terms become quite immaterial. The answer alleges a sale by sample, and there was a great deal of competent evidence as to the character and kind of tobacco contained in the sample. The real question, as it seems to us, for the determination of the jury, was, what was the character and value of the tobacco contained in the sample? The price at which it was to be furnished was not in dispute, and having determined the character of the tobacco contemplated by the contract and its value in Tacoma at the time when its delivery was called for, it would be a mere matter of computation for the jury to determine how much, if any, the defendants were damaged by plaintiffs' failure to furnish the additional six bales. Counsel for appellants admit that, in the absence of, and inability to produce, the sample, secondary evidence of the quality of the sample could be given. If it be conceded that, at the time this evidence was introduced, counsel for appellants supposed that the sample would be produced, the evidence was nevertheless properly received, because actual proof of the non-existence of the sample was made. Nor do counsel claim that the bale was not competent evidence; but they strenuously assert that its production was a surprise to them, and that the failure to produce the sample, and the actual production of the bale, made the latter, instead of the former, the standard of comparison. Nevertheless it did not prevent defendants from showing that the tobacco contained in the bale was of a higher or better quality than that of the sample; nor do the affidavits supporting the motion for a new trial claim or assert such to be the fact. Nor is it alleged or asserted anywhere that the bale actually received in evidence was not a part of the tobacco

furnished. It is difficult, therefore, to perceive how any of these matters complained of afford ground for legal surprise. The evidence was all competent, under the pleadings in the case; and, being competent, and the plaintiffs not having been misled by any inducement held out or deceit actually practiced, they are not at liberty to urge legal surprise as a ground for reversal of the judgment. 16 Am. & Eng. Enc. Law, 544, and cases there cited.

We think there is nothing in the objection that the testimony of the respondents tended to vary the terms of a written contract. The objection assumes that defendants' letter of September 14, 1896, constituted a written contract and governed, at least in so far as the four bales to which it relates are concerned. Upon its face, the letter shows that it is not a complete agreement. It plainly refers to what had preceded. In disposing of the motion for a new trial, the law invested the trial court with a discretion which this court will not disturb, except for abuse.

"On appeal, the orders of the trial court, in granting or refusing new trials, will not be disturbed where the record shows a substantial conflict in the testimony." *Rotting v. Cleman,* 12 Wash. 615 (41 Pac. 907).

See, also, *Holgate v. Parker,* 18 Wash. 206 (51 Pac. 368); Hayne, New Trial and Appeal, § 288; 16 Am. & Eng. Enc. Law, p. 516.

The recovery seems large, and we would have been better satisfied if it had been smaller; but it is supported by the testimony of witnesses whose credibility was passed upon by the jury, and, upon well settled legal principles, we ought not to interfere.

Affirmed.

ANDERS, DUNBAR and REAVIS, JJ., concur.